George L. COYLE, Jr., and the Charleston National Bank, a national banking association, Executors of the Estate of George L. Coyle, and Lucy G. Coyle, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 3209.

United States District Court
S. D. West Virginia,
Charleston Division.

May 5, 1967.

Robert S. Spilman, Jr., Spilman, Thomas, Battle & Klostermeyer, Charleston, W. Va., for plaintiffs.

Richard M. Roberts, Acting Asst. Atty. Gen., Myron C. Baum and Russell L. Davis, Dept. of Justice, Washington, D. C., for defendant.

OPINION

FIELD, Chief Judge.

In this action the Executors of the Estate of George L. Coyle, Sr., seek to recover income taxes and deficiency interest in the total amount of $8,123.02 assessed and paid in his lifetime by George L. Coyle, Sr., (hereafter called "Taxpayer") for the taxable year 1958. By agreement the case has been submitted on the pleadings, stipulation of facts and briefs.

In 1958 Taxpayer sold 66 shares of the common capital stock of Coyle & Richardson Company (hereafter called "Coyle") to Coyle Realty Company (hereafter called "Realty") at a price of $300.-00 per share, a total of $19,800.00. The basis for this stock for federal income tax purposes was $150.00 per share, a total of $9,900.00. Taxpayer and his wife filed a joint federal tax return, reporting the sale of this stock as a long-

term capital gain and paid the income tax on this basis. Upon audit the Internal Revenue Service disallowed the capital gain treatment and taxed the entire proceeds of the stock sale at ordinary income rates on the theory that the sale was a redemption of the stock through the use of a related or controlled corporation, and that such distribution in redemption thereof was essentially equivalent to a dividend. Taxpayer paid the difference and, as stated, recovery thereof with interest is sought in this action. It has been stipulated that this court has jurisdiction and the controversy is properly before it.

Immediately prior to the transaction in question, the stock of the two corporations was owned as follows:

| | Coyle & Richardson, Inc. | Coyle Realty Company |
| --- | --- | --- |
| George Coyle, Sr. | 369 | –0– |
| Lucy G. Coyle (his wife) | 1 | –0– |
| George Coyle, Jr. (son) | 96 | 125 |
| T. C. G. Coyle (son) | 96 | 125 |
| J. T. Coyle (son) | 96 | 125 |
| O. M. Buck | 25 | –0– |
| Julia Farley | 5 | –0– |
| Total Outstanding Shares | 688 | 375 |

Immediately following the sale of the 66 shares of Coyle to Realty, the Taxpayer, of course, owned his remaining 303 shares of stock in Coyle.

Counsel for plaintiffs takes the position that the transaction was an outright sale of property by Taxpayer and is clearly taxable only as a long-term gain under Subchapter O of the Internal Revenue Code of 1954. The Government, on the other hand, contends that the sale is taxable under Subchapter C of the Code by virtue of the application of Sections 302 and 304 to the transaction.

Section 302 covers redemptions "in part or full payment in exchange for the stock" of the redeeming corporation. Taxpayer, of course, owned no stock in Realty, but the Government argues that Section 302 applies to the transaction by virtue of the provisions of Section 304 (a) (1) of the 1954 Code. Section 304 (a) (1) provides that for the purposes of Section 302, if one or more persons are in control of each of two corporations, and, in return for property, one of the corporations acquires stock in the other corporation from the person or persons in control, then such property shall be treated as a distribution in redemption of the stock of the acquiring corporation. This section was included in the 1954 Code to cover redemptions when the two corporations are related by reason of control by common stockholders, often termed "brother-sister" corporations. It was designed to expand the provisions of Section 115(g) (2) of the 1939 Code which related only to redemptions involving controlled "parent-subsidiary" corporations. See 3 U.S.C.Cong. & Adm. News (1954), pp. 4621, 4876–4877. This latter section of the 1939 Code was carried over in the 1954 Code in Section 304(a) (2). For purposes of Section 304 control is defined in Section 304(c) (1) as the ownership of stock comprising at least 50% of the combined voting power of all classes entitled to vote.

Prior to the sale in question, the Taxpayer, his wife and three sons owned in the aggregate some 95% of the stock of Coyle. However, both before and after the transaction, all of the stock in Realty was owned in equal shares by Taxpayer's three sons. Ordinarily, this would

not result in a "brother-sister" corporate relationship between Coyle and Realty. However, the Government takes the position that the rules governing "attribution" of stock ownership are applicable in this case by virtue of Section 304(c) (2) which provides that Section 318(a) relating to constructive ownership of stock shall apply for the purposes of determining control under Section 304(c) (1).

Section 318(a) provides that for purposes of those provisions of Subchapter C to which the rules contained in this section are expressly made applicable (which includes Section 304)

"(A) In general.—An individual shall be considered as owning the stock owned, directly or indirectly, by or for—

(i) his spouse * * *, and

(ii) his children, grandchildren and parents."

 It is clear, of course, that by virtue of his stock ownership as well as the attributive stock owned by his wife and sons, Taxpayer was in control of Coyle. The pivotal issue, however, is whether for the purposes of Section 304 Taxpayer, who owned no stock at all in Realty, was nevertheless in control of that corporation by attributing to him the stock owned by his three sons in the corporation. Counsel for plaintiffs concedes that a literal application of Section 318 supports the Government's position, but argues that such an application would be inconsistent with the purpose and legislative history of Section 304. I agree that the Government's interpretation of Section 304 in the context of the facts presented here is unsound—the legislative history contravenes it and logical analysis of the statutory language rejects it.

 An examination of Section 304 in its entirety as well as the Treasury Regulations (Income Tax Regulations Section 1.304-2) clearly indicates that the "person" subject to its provisions must in his own right be a stockholder in the acquiring corporation. In the statutory scheme Section 318(a) is operative under the terms of Section 304 for the purpose of determining control, but it should not be extended to place a person in the position of a shareholder in the acquiring corporation when, in fact, he owns no stock therein.

Support for this interpretation is found in the following language of Section 304(a) (1):

"* * * stock so acquired shall be treated as having been transferred by the person from whom acquired, and as having been received by the corporation acquiring it, as a contribution to the capital of such corporation."

I agree with counsel for plaintiffs that it would be economically unrealistic to place a construction on this statute which would contemplate a contribution to the capital of a corporation by a person who owned no stock in it.

Equally persuasive on this point is the following excerpt from S.R. U.S.Code Cong. & Ad.News, 83d Cong.2d Sess. (1954); Detailed Discussion of S.R. at p. 4876:

"Subsection (a) sets forth the new general rule added by this section by providing in paragraph (1) that in any case in which 1 or more persons who are in control of each of 2 corporations (brother-sister corporations) sell the stock of one of the corporations to another of such corporations the proceeds of such sale shall be considered to be an amount distributed in redemption of the stock of the corporation which purchased the stock. The stock thus acquired will be treated as a contribution to the capital of the acquiring corporation made by such shareholder, and accordingly will take as its basis the basis in the hands of the shareholder."

The use of the term "shareholder" interchangeably with the terms "taxpayer" and "individual" in these discussions is of more than passing significance in appraising the legislative intent and pattern.

Proceeding on to the Income Tax Regulations, in Section 1.304–2 we find the following language:

"The stock received by the acquiring corporation shall be treated as a contribution to the capital of such corporation. See Section 362(a) for determination of the basis of such stock. The transferor's basis for his stock in the acquiring corporation shall be increased by the basis of stock surrendered by him. (But see below in this paragraph for subsequent reductions of basis in certain cases.) * * If Section 302(d) applies to the surrender of stock by a shareholder, his basis for his stock in the acquiring corporation after the transaction (increased as stated above in this paragraph) shall not be decreased except as provided in Section 301."

Other language in this section of the Regulations as well as the examples therein clearly assumes that the taxpayer is a stockholder in the acquiring corporation, and any attempt to apply the statute to a non-stockholder would render the regulation meaningless.

■ In the light of these observations, it is my conclusion that Section 304 was improperly applied to the transaction here in question, and that the Taxpayer was entitled to capital gain treatment on the sale of his stock in Coyle.

Since this is dispositive of the case, it is, of course, unnecessary for me to consider the question of whether the amount received by the Taxpayer upon the sale of his stock was "essentially equivalent to a dividend" under the provisions of Section 302. I might, however, observe in passing that in each of the "net effect" cases cited by the Government on this latter aspect of the case, the litigating taxpayer was himself the owner of stock in the subject corporation.

Plaintiffs are entitled to judgment and counsel may prepare an appropriate order incorporating this opinion by reference therein.